**Timothy R. ISAKSON, Appellant,**

v.

**Tracie L. ISAKSON, Respondent.**

**No. SD 28977.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 6, 2009.

Petition for Rehearing or Reconsideration
and
Transfer Denied March 2, 2009.

Application for Transfer Denied
March 31, 2009.

Edward C. Clausen, Jason H. Ludwig, Carson & Coil, P.C., Jefferson City, for Appellant.

Stephan F. Gaunt, Steelman, Gaunt & Horsefield, Rolla, for Respondent.

DANIEL E. SCOTT, Presiding Judge.

The marriage of Tim and Tracie Isakson (hereinafter "Husband" and "Wife") was dissolved after 17 years. Husband attended medical school early in the marriage and is a physician with a lucrative income. Wife was a stay-at-home mom for most of the marriage at Husband's request. During the period of separation, Husband rarely visited his three children, and engaged in misconduct by diverting marital assets and incurring enormous debt for gifts and trips for his paramours. Husband raises numerous points on appeal.

■ We will affirm a dissolution decree unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Marriage of Taylor*, 244 S.W.3d 804, 808 (Mo.App.2008).

### Statutory Findings (Point I)

Husband attacks the adequacy of statutorily required findings as to child custody. *See* § 452.375.[1] He claims the judgment did not relate its findings to the statutory factors, or make findings on all such factors, and argues therefrom that "meaning-

---

1. Statutory citations are to RSMo 2000, as amended through 2006.

ful appellate review of custody issues is made nearly impossible."

Relocation (Point II) is the only custody issue raised by Husband, and we find the judgment adequate *for meaningful appel- late review thereof.* The findings mandat- ed by § 452.375.6 " 'need not mechanically discuss all eight factors listed in section 452.375.2, [but] must discuss the relevant factors in such a manner that meaningful appellate review is possible.' " *Strobel v. Strobel,* 219 S.W.3d 295, 299 (Mo.App.2007) (*quoting Alberswerth v. Alberswerth,* 184 S.W.3d 81, 91 (Mo.App.2006)). We deny Point I, again quoting *Strobel* (219 S.W.3d at 300):

> Rule 84.13(b) provides: "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court materially affecting the mer- its of the action." The judgment here permits us to engage in meaningful re- view. The findings made support the judgment entered, and any deficiencies therein are not material to the merits of this action.

### Relocation (Point II)

■ Husband claims the trial court "erred in ordering that Tracie and the children be allowed to relocate to Nixa." In disputing the evidentiary basis for "said order" and whether relocation is in the children's best interests, Husband blurs the distinction between initial custody de- terminations and custody modifications.

Section 452.377.9, which requires proof that relocation is in a child's best interest, governs modification of existing custody

arrangements. *Day ex rel. Finnern v. Day,* 256 S.W.3d 600, 603 (Mo.App.2008). This was an initial custody determination, wherein Wife's intent to relocate was only one factor for the trial court to consider (§ 452.375.2(7)), and which it plainly did. Noting Husband's failure to spend time with the children, Wife's request for per- mission to relocate, and Nixa's "excellent" education opportunities, the court found that relocation was in the children's best interest and Husband would not lose par- enting time thereby. The trial court prop- erly considered Wife's proposed relocation in determining custody, and its ruling is supported by substantial evidence. Point II is denied.

### College Expenses (Point III)

■ The judgment provided, in part, that:

> Husband shall pay 100% of the cost of Wife's fees, tuition and books to attain a bachelor's and master's degree up to the cost then in effect at Missouri State University in Springfield, Missouri. Husband shall pay such costs within ten (10) days of submission of a bill for same to him by Wife.

Husband contends the trial court lacked authority to enter such an order. He also claims the order is vague and unenforcea- ble.

■ If such an order is to be upheld, it must be as rehabilitative maintenance,[2] as Wife now argues that it is. Yet the judg- ment did not denominate this obligation as maintenance, or state whether it was sub- ject to future modification. A maintenance

---

**2.** Courts can award rehabilitative mainte- nance where a party needs further training or education to become self-supporting. *See In re Marriage of Clift,* 108 S.W.3d 197, 201 (Mo.App.2003); *Murphy v. Murphy,* 71 S.W.3d 202, 206 (Mo.App.2002). It is gener- ally used in situations, like this one, where one spouse has devoted most of her life to household and maternal tasks, thus forfeiting the opportunity to develop occupational skills, or requires further education or training to support herself. *Kovacs v. Kovacs,* 869 S.W.2d 789, 793 (Mo.App.1994).

award "shall state if it is modifiable or nonmodifiable." § 452.335.3. Failure to do so is reversible error. *In re Marriage of Goodin,* 5 S.W.3d 213, 219 (Mo.App.1999).

■ Moreover, rehabilitative or limited maintenance is awarded where substantial evidence demonstrates an impending change in the recipient's financial position, or a reasonable likelihood such change will occur. *See Knigge v. Knigge,* 903 S.W.2d 225, 226 (Mo.App.1995); *Clark v. Clark,* 801 S.W.2d 95, 97–98 (Mo.App.1990). This may occur, "for instance, where one spouse is pursuing additional training or education which will markedly change that person's earning capacity, and a known time frame exists for completion of that training or education." *Knigge,* 903 S.W.2d at 226. Rehabilitative maintenance routinely is limited to a time period—our research has found no case otherwise—since implicit in such an award is that the recipient "will be self-supporting at the end of the time period." *Clark,* 801 S.W.2d at 97.

Wife, age 45 at trial, essentially has a high school education. Under her evidence, she would need six years of full-time study for bachelor's and master's degrees. She made it clear, however, that her first priority is raising her children. She indicated only that she plans "to maybe go part-time to start with." She suggested no schedule or timeframe to pursue her education. She could not say when she would be able to earn an income with her degrees, or how much she might earn. There was no evidence that Wife would start or finish her education within any specified time period, or that she felt obliged to do so, and the judgment sets no timetable therefor and no requirement of satisfactory progress. The order, as currently worded, is too vague and indefinite

to be upheld under existing rehabilitative maintenance case law.

Thus, while the trial court did not lack authority to enter such an order, these provisions are unenforceable as framed. We reverse that part of the judgment relating to payment of Wife's college expenses and remand for further proceedings and entry of an amended judgment in this regard, consistent with this opinion and applicable law.

## Spring Creek Property (Point IV)

■ Husband claims the trial court erred in ordering him to make mortgage payments on some 40 acres "in Spring Creek" until it is sold, and in not attaching any conditions to the sale of the property.

■ A trial court has broad discretion in dividing marital debts and determining how they will be paid, which we will not disturb absent a clear abuse of discretion. *See Rivers v. Rivers,* 21 S.W.3d 117, 122 (Mo.App.2000); *In re Marriage of Myers,* 845 S.W.2d 621, 626 (Mo.App.1992). Husband complains that he must pay the mortgage after dissolution, with no offset for such payments when the property is sold. Other cases have upheld such orders. *See, e.g., Rivers,* 21 S.W.3d at 122–23; *Ansley v. Ansley,* 15 S.W.3d 28, 34 (Mo.App.2000). There was no abuse of discretion in this regard.

Still, we must remand for inclusion of a complete legal description of this and any other real estate awarded in the decree. *In re Marriage of Tanner,* 245 S.W.3d 922, 923 (Mo.App.2008). The trial court also should clarify its order for sale in appropriately enforceable terms [3] and determine if a sale deadline is appropriate in light of

---

**3.** The judgment itself includes no direction to sell this property or provisions therefor, but merely attaches and incorporates Wife's prop-

erty schedules, wherein she proposed to "Split & Sell" this property.

this court's recent opinion in *Bussen v. Bussen,* 273 S.W.3d 90 (Mo.App.2008).

### Double Charges (Points VI & VII)[4]

■ The judgment orders Husband to pay Wife $20,000 for marital funds diverted to other women and for property equalization. Husband attributes $15,500 of this sum to a down payment, by credit card, on a timeshare in a girlfriend's name. Since the judgment allocates the credit card debt to him, Husband claims he is being double-charged and Wife's judgment should not exceed $4,500. Our review of the record indicates this Point VI complaint is well-founded, and on remand, the judgment should be amended accordingly. *See In re Marriage of Reese,* 155 S.W.3d 862, 873–74 (Mo.App.2005).[5]

■ However, we reject Husband's Point VII attack on the order to pay Wife 50% of what Husband spent on the timeshare. Trial courts enjoy broad discretion in dividing marital property (*Myers v. Myers,* 47 S.W.3d 403, 407 (Mo.App.2001)), which the timeshare certainly would have been, but for title in the girlfriend's name.[6] Under these circumstances, and since Wife received no interest in the timeshare, the challenged order was within the court's authority and discretion.

### Property Distribution (Point VIII)

■ Finally, Husband claims the overall property distribution is inequitable. As noted above, a trial court has broad discretion in dividing property. *Myers,* 47 S.W.3d at 407. We will interfere only if the division is so unduly imbalanced that it amounts to an abuse of discretion—*i.e.,* so clearly against the logic of the circumstances, and so arbitrary and unreasonable, as to shock one's sense of justice and indicate a lack of careful consideration. *Dunnagan v. Dunnagan,* 239 S.W.3d 181, 184 (Mo.App.2007). We presume the property division to be correct, and it is Husband's burden to overcome that presumption. *Id.*

Husband concedes that he should bear debts exceeding $189,000 that he incurred while separated. Also, the court reasonably ordered Husband to pay his own student loans (another $186,000) in light of his income and earning potential, and Wife's inability to support herself through reasonable employment. The remaining disparity does not shock one's sense of justice or indicate a lack of careful consideration. Point VIII is denied.

### Conclusion

As to Points III, IV, and VI, the judgment is reversed and remanded for further proceedings and entry of an amended judgment consistent with this opinion and applicable law. In all other respects, the judgment is affirmed.

BARNEY and BATES, JJ., concur.

---

**4.** Husband withdrew Point V at oral argument.

**5.** We cannot sustain the order on "property equalization" grounds, as Wife suggests, since the property division already favors her.

**6.** The timeshare was purchased during the marriage using marital debt. Husband testified that the divorce "may have" been why it was acquired in the girlfriend's name; they planned to "put it back" into his name; and they already had signed papers to do so.