Carolyn F. HILL, Respondent,

v.

Bernard J. HILL, Appellant.

No. SC 83279.

Supreme Court of Missouri,
En Banc.

July 24, 2001.

Rehearing Denied Sept. 25, 2001.

Daniel R. Schramm, Paul H. Schramm, St. Louis, William P. Grant, Clayton, for appellant.

Michael L. Schechter, Theodore S. Schechter, Clayton, for respondent.

DUANE BENTON, Judge.

On October 5, 1999, the circuit court dissolved the marriage of Carolyn F. and Bernard J. Hill, ordering Husband to pay maintenance of $1,550 per month. After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const. art. V, sect. 10.* Affirmed in part, reversed in part, and remanded.

### I.

In ordering maintenance, the trial court attributed "no significant income" to the pension and IRA accounts apportioned to Wife. Husband contends that this income would be sufficient to meet Wife's reasonable needs.

A court may grant maintenance if it finds that the spouse seeking it: (1) lacks sufficient property, including marital property apportioned to the spouse, to provide for the spouse's reasonable needs; and (2) is unable to support herself or himself through appropriate employment. *Section 452.335.1 R.S.Mo.2000.*[1]

▆ The trial court apparently believed that the *Witt* case requires excluding IRA accounts when calculating maintenance for spouses under 59½ years old. See *Witt v. Witt*, 930 S.W.2d 500 (Mo.App.1996). In *Witt*, the trial court included income from IRA accounts, in calculating maintenance. *Id.* at 503. The Western District Court of Appeals reversed, holding that IRA accounts are not "readily available" because withdrawals (before age 59½) are subject to penalties and taxes. *Id.* As a general principle, income that is not readily available—such as a pension paid only at a fixed, future date—is not counted for maintenance purposes, while readily available income—from cash and cash-like funds—is. See *Jung v. Jung*, 886 S.W.2d 737, 740–41 (Mo.App.1994); *Kinder v.*

---

1. Unless indicated otherwise, all statutory citations are to RSMo 2000.

*Kinder,* 777 S.W.2d 339, 342 (Mo.App. 1989).

■ Here, Wife—who was nearly 58½ on the date of dissolution—received about $500,000 in IRA and retirement accounts. A trial court, in deciding the sufficiency of a spouse's property to provide for reasonable needs, must consider "marital property apportioned" to a spouse. *Sections 452.335.1(1), 452.335.2(1), (5); Leslie v. Leslie,* 827 S.W.2d 180, 183 (Mo. banc 1992). This reflects the general principle that investment income must be considered, so that maintenance is not awarded for the purposes of building an estate or accumulation of capital. *In re Marriage of Tappan,* 856 S.W.2d 362, 366–67 (Mo.App. 1993); *Brooks v. Brooks,* 957 S.W.2d 783, 792–93 (Mo.App.1997). *Witt* and its progeny should not be interpreted to prohibit consideration of retirement accounts (subject to penalties and taxes) in calculating maintenance. See also *Ansley v. Ansley,* 15 S.W.3d 28, 33 (Mo.App.2000); *Taylor v. Taylor,* 12 S.W.3d 340, 347 (Mo.App.2000); *Anderson v. Anderson,* 5 S.W.3d 535, 537 (Mo.App.1999); *Van Natter v. Van Natter,* 988 S.W.2d 110, 113 (Mo.App.1999); *Francka v. Francka,* 951 S.W.2d 685, 696 (Mo.App.1997).

In *Shook v. Shook,* the Southern District Court of Appeals held that in awarding maintenance, the trial court "is required to" attribute income that a spouse may receive from retirement and IRA accounts. 997 S.W.2d 103, 107–08 (Mo.App.1999). This requirement often forces payment of substantial penalties and taxes, which according to the evidence here, can total 55 percent. The *Shook* requirement thus contradicts the principle that a spouse is not required to consume his or her apportioned share of marital property before receiving maintenance. *Leslie,* 827 S.W.2d at 183. In this case, Husband proposed that Wife alone pay taxes and penalties on her IRA and retirement funds, which could consume up to 27½ percent of the total value of the funds. *Shook* and similar cases should not be followed to the extent they require imputing income from retirement and IRA accounts in every case. See also *Nelson v. Nelson,* 937 S.W.2d 753, 756 (Mo.App.1997).

■ In sum, when calculating maintenance, a trial court must consider the income from retirement and IRA accounts to be apportioned as marital property. The trial court determines the amount of income—if any—imputed from these accounts based on the facts and circumstances of each case—including the cost to convert the account into cash, the age of the parties, their intent as to investment/consumption/retirement, the relative division of marital property and marital debts, and any equitable adjustment for reasonably certain taxes and penalties. See *Kuchta v. Kuchta,* 636 S.W.2d 663, 665–66 (Mo. banc 1982).

■ This is but an application of the concept that trial courts have broad discretion in determining the amount of maintenance and appellate courts do not interfere, absent an abuse of discretion. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 66 (Mo. banc 1983). Here, the trial court abused discretion. It ruled that the IRA and retirement accounts apportioned to Wife were, in effect, not readily available and thus excluded from the maintenance calculation. However, in its judgment, the trial court valued the retirement assets—for purposes of division of marital property—at their "cash" after-tax, after-penalty value, which was 45% of their true value at the date of dissolution. The judgment cannot be sustained because it values the retirement assets as cash, yet refuses

to impute any significant income from them.[2]

## II.

Husband raises two other points on appeal, invoking *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### A.

 Husband argues the trial court underestimated Wife's earning capacity, by imputing a salary of $893 per month. Citing Wife's college degree, teaching certificate, and teaching experience, Husband claims Wife can earn more than minimum wage. Imputing income depends on the facts, determined on a case-by-case basis. See *Pelch v. Schupp*, 991 S.W.2d 729, 734 (Mo.App.1999).

 Wife was not employed full-time outside the home during most of the marriage. She was last employed a teacher full-time in 1966, and part-time in 1983. Although self-sufficiency should be encouraged, maintenance may be awarded when one spouse was a homemaker during the marriage and relied on the other spouse for monetary support, staying out of the marketplace. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 856–57 (Mo.App. banc 1977); *Brock v. Brock*, 936 S.W.2d 882, 885–87 (Mo.App.1997). The trial court did not err in imputing only minimum-wage earning capacity to Wife.

### B.

 Wife's expert estimated "conservatively" "entry-level" Husband could earn between the mid-$40,000's to the mid-$60,000's. The trial court imputed his annual salary at $70,000 a year. Husband claims this finding is against the evidence.

 Before retirement, Husband routinely earned more then $70,000—for example, $114,000 in 1995, $99,000 in 1996, and $112,000 in 1997. Husband contends that his retirement was planned, with Wife's knowledge and consent, and not for the purpose of evading spousal responsibilities. The trial court disbelieved Husband. See *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). A court may, in proper circumstances, impute income to a spouse according to what could be earned by "best efforts." *Leslie*, 827 S.W.2d at 183. The trial court did not err in finding that Husband could earn $70,000 by his "best efforts."

## III.

The judgment is affirmed in part, reversed in part, and the case is remanded.

All concur.

---

2. Although the point relied on mentions child support, neither party cites any authority or develops any argument about child support.

Re-calculation of child support, to the extent affected by the calculation of maintenance, is left for remand.